## The Inhabitants of CAMBRIDGE *versus* The Inhabitants of LEXINGTON.

A statute of 1699 provided, that " the great bridge " over Charles river should from time to time be repaired and maintained by the towns of Cambridge and Newton, Cambridge paying two thirds and Newton one third of the expense. In 1712, the Northern Precinct of Cambridge was by a legislative act incorporated into a town by the name of Lexington, upon terms agreed upon between them and Cambridge, that is to say, that Lexington should bear such a part of the two thirds of the bridge as should be according to their proportion with Cambridge annually in the Province tax, and that they should annually pay to Cambridge their part of the expenses After this, Lexington paid their proportion of two thirds until 1781, when an act was passed repealing that part of the act of 1699 which subjected Newton to a part of the charge of maintaining the bridge. From 1781 to 1831, Cambridge repaired the bridge, and demanded and received of Lexington payment of Lexington's proportion of the whole expense. It was *held*, that the repeal above mentioned threw upon Cambridge as it existed in 1699, that is, including Lexington, the whole burden of maintaining the bridge, and that the usage of these two towns since 1781 was a contemporaneous construction affording strong evidence, that such was the intent of the legislature and of the parties interested, and that the act of 1781 was passed with the assent of such parties.

If such construction were doubtful, *it seems,* that the payment by Lexington for fifty years would afford presumptive evidence of a new and original agreement, by which Lexington was to pay the same proportion of the whole expense as it had paid of the two thirds, before Newton was released.

ASSUMPSIT for $121·47, which the plaintiffs allege to be the defendants' proportion of the expenses incurred in repairing " the great bridge " over Charles river, between Cambridge and Brighton.

The parties stated a case.

" The great bridge " over Charles river in Cambridge having gone to decay, it was rebuilt in pursuance of an act of the legislature, of July 18, 1699, which, among other things, provided, that the bridge should from time to time be repaired and maintained by the towns of Cambridge and Newton, Cambridge paying two thirds, and Newton one third of the expense. These two towns assented to this provision, and for many years contributed accordingly to the expenses of repairing the bridge.

In 1712, the Northern Precinct of Cambridge was by a legislative act incorporated into a town by the name of Lexington, upon such terms as the precinct and the town of Cambridge had agreed upon, " that is to say, that the Northern

Precinct, when made a township, shall bear such a part of the charge of the great bridge over Charles river in Cambridge, as shall be according to their proportion with the town of Cambridge annually in the Province tax, and they shall annually pay to the treasurer of the town of Cambridge their part of the charges as aforesaid." After this, the defendants paid their proportion according to the Province tax, of two thirds of the expenses concerning the bridge, till 1781.

In 1732, the Province granted £300 towards the expense of supporting the bridge. In 1734, the Province granted 3000 acres of land to Cambridge, Lexington, and Newton, to enable them " to support the great bridge for ever."

On May 16, 1781, upon the petition of the town of Newton, the legislature passed an act, reciting, that in 1699, Newton had no part of any large bridge to maintain, but that in 1781, it was subjected to the charge of maintaining the one half of five bridges over Charles river, and repealing that part of the act of 1699, " that subjects the town of Newton to any part of the charge of supporting and maintaining said bridge in the town of Cambridge, and also any other act or resolve that respects the town of Newton, relative to their being obliged to maintain said bridge, &c., excepting, that the town of Newton shall be held to pay one third part of the repairs now to be made, agreeable to an agreement entered into between the selectmen of the towns of Cambridge, Newton, and Lexington, in May, one thousand seven hundred and eighty."

From 1781 to 1831, the plaintiffs periodically demanded and received of the defendants their proportion, according to their relative State tax, of the whole expense of the repairs and rebuildings of the bridge. Since 1831, the defendants have been advised, that if they were liable at all, they were only liable to pay their proportion of two thirds of the charges, and they have refused to pay more.

If the defendants were bound to pay their proportion, according to their State tax, of the whole of the charges and expenses of maintaining the bridge, they were to be defaulted, and judgment was to be rendered for the plaintiffs, according to their account stated in the writ.

*Greenleaf, Fay,* and *Whipple,* for the plaintiffs. The act of 1712, by which Cambridge was divided into two towns, created a contract between these towns for the maintenance of the bridge, and the intention was, that the burden should be borne by them respectively, according to their proportion of the Province tax. The expression in the act of 1712, " the two thirds of the charge of the great bridge," was merely descriptive of the incumbrance on Cambridge, as it then existed ; the act says, in effect, that so far as regards the maintenance of the bridge, Lexington shall continue to be a part of Cambridge. *Windham* v. *Portland,* 4 Mass. R. 389, 390 ; *Bowdoinham* v. *Richmond,* 6 Greenl. 112.

The provision in the act of 1712, has been thus expounded by the usage of the towns since 1781, when they first had occasion to put a construction upon the act. This is a contemporaneous exposition, which is binding upon the parties. *Blankley* v. *Winstanley,* 3 T. R. 279, and 288, note ; *Saville* v. *Robertson,* 4 T. R. 720 ; *Fowle* v. *Biglow,* 10 Mass. R. 379 ; *Sevey's case,* 6 Greenl. 118 ; *Farrar* v. *Merrill,* 1 Greenl. 17.

The act of 1781, by repealing the clause in the act of 1699, threw the whole burden of maintaining the bridge upon Cambridge, as it existed in 1699, when it included Lexington. It must be deemed to have passed with the assent of all the towns interested. They were all represented in the legislature, and the assent of Lexington is to be inferred, not only from their acquiescence for fifty years, but also from their positive acts in making payments to Cambridge. *Hampshire* v. *Franklin,* 16 Mass. R. 86 ; Angell & Ames on Corp. 128, and note 1 ; *Farrar* v. *Merrill,* 1 Greenl. 17. From the facts in the case, the Court are authorized to presume a new agreement made between the parties in 1781, and one founded on a new consideration, or at least an agreed exposition of the contract of 1712.

*Hoar* and *Peabody,* for the defendants, contended, that in pursuance of the act of 1699, the town of Lexington was clearly liable for no more than its proportion of the two thirds ; that the principle of contemporaneous construction does not apply where, as here, the terms of the contract are unambigu-

ous, nor where the contract is made seventy years before the <span>Cambridge<br>*v.*<br>Lexington</span> construction is given ; that Lexington had no notice of the petition of Newton, previously to the enactment of the statute of 1781, discharging Newton from its obligation to contribute, and therefore could not be affected by that statute, neither is Lexington named in the statute as being liable to contribute ; that a new contract on a sufficient consideration, was not to be inferred from the acts of Cambridge, in demanding, and of Lexington, in paying, for fifty years, more than Lexington's proportion of the two thirds ; and that the payment of more since 1781, was made under a mistake of law or fact, probably of fact, the defendants supposing that the demand made on them was for their proportion of the two thirds only, and this could not give Cambridge a right to exact in future the same proportion of the whole expense.

SHAW C. J. delivered the opinion of the Court. The *Oct. 16th* inhabitants of the town of Lexington are undoubtedly bound by their act of incorporation of 1712, by which they were set off from the town of Cambridge, to pay their proportion of supporting the great bridge, according to the terms of the act, and the articles of agreement referred to and recited in it, and the question is upon the construction of the act, to ascertain what those terms were.

Previously to this act of incorporation, in 1699, an act was passed, providing for the rebuilding of what was then called the great bridge over Charles river in Cambridge, which provided among other things, that after the bridge should be re built and finished, it should from time to time be repaired and maintained at the charge of the towns of Cambridge and Newton, in the proportion of two thirds to Cambridge, and one third to Newton. It appears, however, that although this duty was imposed on Cambridge and Newton, the Province did something afterwards for their relief. In 1730, Lexington and five other towns (probably those which had been set off from Cambridge and Newton) petitioned for such relief, but it was not then granted. In 1732, the Province granted £300 towards these expenses ; and in 1734, they granted 3000 acres of land to Cambridge, Lexington and Newton, to enable them to support the great bridge for ever.

Cambridge
*v.*
Lexington.

By force of this act of 1699, the support of this great bridge was charged upon the towns of Cambridge and Newton, both having at an earlier period constituted one town, and this obligation existed, at the time that Lexington was set off from Cambridge into a separate town. By this act of incorporation they were set off into a distinct town upon such terms as they and the town of Cambridge had agreed upon ; that is to say, that said Precinct, when made a township, should bear such a part of the two thirds of the charge of the great bridge as should be according to their proportion with Cambridge of the Province tax, and should annually pay the treasurer of Cambridge their part of the charges as aforesaid. By their acceptance of this act of incorporation, the town of Lexington agreed to this condition, and became bound to comply with it. From these provisions, it appears obvious, that the parties regarded this duty as an extraordinary one, created by a special act, and not depending upon the general laws and policy of the government, and that they intended, that whilst each town, after the division, should become subject to the common and ordinary duties and liabilities of municipal corporations, this obligation should remain common to both, according to their respective ability, as expressed by their respective proportions paid to the Province tax ; in other words, to be borne by the inhabitants of both towns, in the same manner as if they had not been divided.

Then the question is, what was the effect of the act of 1781, exempting Newton from the payment of one third of the expense of repairing this bridge, upon the relative rights and obligations of Cambridge and Lexington ? The defendant town contends, that in no event were they liable, by their act of incorporation, to pay more than two thirds of the expenses of maintaining this bridge ; that if the exemption of Newton threw an obligation upon Cambridge to pay the other third, it was a new duty, created after the separation, for which they could not be responsible, any more than if an act had passed requiring Cambridge to build a new bridge. On the contrary, it is contended by the plaintiff town, that the words " the two thirds," in the act, were not intended to limit the proportion which Lexington should pay, that it was descriptive

of the duty that then rested on the town of Cambridge, before the separation, which was then only two thirds, that the substance of the agreement was, that Lexington should bear her proportion of that duty, that it was a duty created before the separation, that this was understood and intended to be the effect of the act of 1781, exempting Newton, and was so assented to by Lexington, and that this is proved by their actual payment of their proportion of these expenses according to this exposition, for half a century from the passing of the act.

It is conceded that from 1781, for fifty years, Lexington paid to Cambridge her proportion of the whole of these expenses. The suggestion that this was done without knowing that she was paying more than her proportion of two thirds, seems unfounded, and the presumption is violent, that Lexington must, from time to time, through her proper auditing and accounting officers, have examined the accounts of these repairs, and through them must have had notice that she was paying a proportion of the whole instead of two thirds. Such a payment, uninterruptedly, for such a length of time, is strong evidence of a subsisting debt or duty ; but the question is, what legal effect can be given to this fact, or rather what species of legal presumption does it tend to support, which shall establish a subsisting and continuing obligation on the part of Lexington to continue such payment. It may be regarded in two points of view ; either, 1. as a contemporaneous construction of the act of 1781, virtually recognising the duty of Lexington to unite with Cambridge in bearing this obligation as before, to the full extent of the liability of Cambridge, in regard to this bridge ; or 2. as evidence of a new and original agreement between Cambridge and Lexington, with the sanction of the Legislature, upon the petition of the town of Newton to be absolved from her obligation, by which Cambridge and Lexington consented to assume it, and in consideration of which the act was passed.

1. The act of 1781, which is very short, is rather peculiar in its provisions. It does not enact in direct terms, that Newton shall be exempted from paying one third of these expenses, it does not in terms direct how the same third shall afterwards be paid. It recites, that the General Court, in 1699,

thought fit to pass an act for the purpose of supporting and maintaining Cambridge bridge, and by that act, subjected New-ton to one third of the charge, &c., and it then proceeds to repeal that part of the act, that subjects the town of Newton to any part of such charge. It holds the town of Newton liable to pay one third of the repairs, then to be made, agreea-ble to an agreement entered into between the selectmen of the towns of Cambridge, Newton and Lexington in May then preceding. This clause tacitly recognises the pre-existing ob-ligation of these three towns to make these repairs. The act itself does not direct how the repairs shall be afterwards made ; that is left to implication. But by referring to the duty as created by the act of 1699, the implication is, that it was to continue to be supported as provided for by that act, except so far as it was affected by the repeal in relation to Newton. But as the duty was laid on Cambridge and Newton jointly, when Lexington was part of Cambridge, would it be a forced con-struction, that when Newton was released, it was understood that the duty would remain on Cambridge, as she was when the duty was created, including Lexington, and that it would now rest on Cambridge and Lexington, although for general purpos-es they had been formed into two corporations, subject to a common liability in regard to this duty ? The fact that the parties directly and adversely interested, immediately proceed-ed to act in conformity to this view, and so continued for half a century, is a contemporaneous construction, affording strong evidence, that such was the intent of the legislature and of the parties, and that the act was passed with their assent and ac-quiescence, and was to be so construed. The reason assign-ed for absolving Newton, in the act, is, that whereas she had at the time of passing the former act (1699) no part of any great bridge to support, whereas now (1781) she had half of five bridges over Charles river to support, &c. At this time, Lexington had no great bridge to support, and therefore it might be thought reasonable that she should bear her propor-tion with Cambridge, of the burden originally common to both.

Further, it is to be observed, that this being a bridge cver navigable waters, (*Commonwealth* v. *Charlestown*, 1 Pick

180,) and also being a bridge, the erection and maintenance of which was specially provided for, by legislative acts, (*St.* 5 *Will. & Mary,* § 1, Ancient Chart. 268,) it was not one which the town of Cambridge was bound to support, under the general obligation of towns to maintain highways. The obligation, therefore, if any, which devolved on Cambridge, to pay the whole, in 1781, when Newton was exempted from paying one third, must have been considered by the legislature to be imposed in virtue of the duty created by the act of 1699, when Cambridge and Lexington were one town. But the act of 1699 subjected Cambridge, in terms, only to two thirds of those expenses. Any exposition or construction of the act of 1781, which would give it the effect to charge Cambridge with the whole of these expenses on the repeal of that part of the act, which subjected Newton to one third, would in like manner charge the inhabitants of Lexington with their proportion of the whole as they were liable to the like proportion of two thirds before. That Cambridge so understood the act is manifest from the fact, that they forthwith assumed the whole expense and have borne it ever since, and that Lexington so understood it and acquiesced in it, is alike manifest from the fact, that they thenceforth assumed, and paid without objection for a long time, their proportion of the whole of these expenses.

It is to be considered that we are dealing with facts, beyond living memory, that the rights of parties, and their understandings and contracts, must be judged by their acts, especially where they are adverse to their interests, uniform, and of long continuance. With these considerations in view, it is reasonable to conclude, that when this act was passed, absolving Newton in consideration of her now having other expensive bridges to support, it was intended to place this obligation on Cambridge and Lexington, the latter having no great bridge to support, and they being as one town jointly liable in 1699, when the original obligation was created, and that it was done in this mode, by repealing that part of the act of 1699 which charged Newton jointly with Cambridge, for the purpose of leaving the burden of the whole to rest on Cambridge by force of the act of 1699, so as to make it take effect at a time an-

Cambridge
v.
Lexington.

terior to the incorporation of Lexington, and thus by force of the act of incorporation, to subject that town to her share of this burden. That such was the real purpose and intent of this act, that Cambridge and Lexington both so understood and assented to it, is manifest from the fact, that they both proceeded to act in conformity with this construction, until a period when it may be presumed that all living memory of the actual circumstances of the transaction had become obliterated. In all ancient instruments and transactions, where doubtful words are used, where the purpose and intent are obscurely expressed, the acts and conduct of the parties, immediately following, are to be regarded as the best expositors. *Livingston* v. *Tenbroeck*, 16 Johns. R. 14. It is upon this ground, that possession, occupation, and use are allowed to have so prevailing an influence, in all old deeds, grants and conveyances.

2. But if this construction were more doubtful, the Court would be strongly inclined to the opinion, that the payment for fifty years, would of itself afford presumptive evidence, in connexion with the circumstances of the case, of a new and original agreement, of which the evidence is now lost by time and accident, by which Lexington undertook to pay to Cambridge the same proportion of the whole expense of supporting and repairing this bridge, as she had formerly paid of two thirds of the same expense, before Newton was released.

The long acquiescence of a party, in an adverse claim of right, the long-continued performance of a duty to another, not only without resistance but without objection, is a strong ground upon which to establish rights and duties ; and much of the security of property and of the peace of society, is founded upon a steady adherence to this salutary rule. It is founded on the strictest course of legal reasoning, inasmuch as it would be contrary to all experience for a party long to continue to pay money, or perform any other onerous duty to another, unless in pursuance of some contract or other legal obligation.

*Defendants defaulted.*